IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM WHITTMAN., | * | |
| Plaintiff, | * | |
| v. | * | Civil No. SAG-22-1547 |
| PPE CASINO RESORTS MARYLAND, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff William Whittman ("Plaintiff"), who is self-represented, filed this lawsuit asserting federal and state claims against Defendants PPE Casino Resorts Maryland, LLC ("PPE") and The Cordish Companies, Inc. (collectively "Defendants"). Defendants filed a motion to dismiss, ECF 5, which is now fully briefed. ECF 9, 12. Plaintiff has since filed a motion to stay the litigation, ECF 10, which is also fully briefed. ECF 13, 14.

No hearing is necessary to resolve these motions. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Defendants' motion to dismiss, ECF 5, will be granted and Plaintiff's motion to stay, ECF 10, will be denied. Plaintiff's Motion for Leave to File Surreply, ECF 16, will also be granted, and the surreply has been considered in evaluating these motions.

**I.    Factual Background**

The following facts are derived from Plaintiff's Complaint, ECF 1, and are assumed to be true for purposes of this motion. Plaintiff is a United States citizen of Albanian heritage who asserts that he "look[s] and sound[s] foreign born." *Id*. ¶¶ 17, 46-47. From at least 2017 through 2021, Plaintiff frequently played video slot machines at the Maryland Live! Casino ("the casino") in Baltimore. *Id*. ¶ 16. As a frequent customer, Plaintiff was a "black card member" at the casino,

which allowed him various privileges. *Id.* ¶ 36. This included the right to place a hold on a slot machine when he wanted to take a break from playing but believed the machine would soon hit a jackpot. *Id.* Plaintiff preferred machines featuring progressive jackpots. *Id.* ¶¶ 35, 49. Plaintiff selected the "Progressive Triple Seven Blazing" machines because Defendants advertised them as "98% pay back machines." *Id.* ¶¶ 43, 50, 55. Plaintiff asserts, however, that his personal return has been far below 98% of the money he has gambled in the machines. *Id.* ¶¶ 59, 61.

On various occasions in 2017 and 2018, Plaintiff believed that "American-born" casino patrons enjoyed greater success when playing the slot machines and received preferential treatment when seeking to hold particular machines for later use. *See, e.g.*, *id.* ¶¶ 32-41, 63-70, 71-79, 80-141, 142-45, 186-242, 243-58, 275-86. Plaintiff believed the casino intentionally preferenced its American-born patrons at the expense of foreign-born patrons, even to the extent of "rigging" the payouts for American-born customers. *Id.*

On October 18, 2019, Plaintiff simultaneously withdrew money from two of the casino's automatic teller machines ("ATMs"). *Id.* ¶ 311. As a young woman who Plaintiff believed to be American-born approached the ATMs, Plaintiff picked his money up from one of the machines to allow her to use it. *Id.* ¶ 314. The woman began insisting that the money was hers and aggressively pursued Plaintiff around the casino demanding that he return her money. *Id.* ¶ 320. He walked to a restroom to get away, and she did not follow him inside. *Id.* ¶¶ 326, 331. When Plaintiff left the restroom, he approached the casino's security desk to report the incident, but the woman was already speaking to the security officer. *Id.* ¶ 333. The security officer was more receptive to the woman's story than to Plaintiff's, and instructed Plaintiff "[y]ou cannot go nowhere." *Id.* ¶¶ 334, 338, 343. The casino's Head of Security became involved and ordered Plaintiff to go with him to the ATMs. *Id.* ¶ 349. When the Head of Security reviewed the video footage, he affirmed that the

money belonged to Plaintiff. *Id.* ¶ 351. He then told the woman to "go have fun" in the casino and instructed Plaintiff to leave her alone. *Id.* ¶ 356.

On April 17, 2021, after experiencing gambling losses, Plaintiff asked a casino employee if she "knew how one can ban himself." *Id.* ¶¶ 365-66. The employee directed Plaintiff to the security desk where an officer processed his request and gave him paperwork to effectuate the ban. *Id.* ¶¶ 370-77, 381. Before handing Plaintiff the paperwork, the security officer walked him "through the entire casino floor" to a processing area accessible only to employees, instead of taking him to the casino's management suite where he could be thanked "for having been a loyal customer." *Id.* ¶ 371-74. Although the casino employees suggested that he not effectuate the permanent ban and instead just refrain from playing, Plaintiff signed the paperwork because he "want[ed] to have the fear of being arrested" to deter him from entering the casino. *Id.* ¶ 388-91. Ultimately, Plaintiff chose not to submit the paperwork to the casino, and employees told him "he was not yet banned" and "could even go play." *Id.* ¶¶ 396, 404.

About two months later, in July, 2021, Plaintiff played a Fire Link machine at the casino. *Id.* ¶ 406. The machine had a history of problems printing payout tickets. *Id.* ¶¶ 412, 414. During his play, Plaintiff became frustrated by his payout, and "slammed the spin button harder[,] unhappy with the operation of this casino." *Id.* ¶ 420. He then "pressed the cash out button," and the machine began "making the noise it makes when the machine cannot print." *Id.* ¶ 425. When Plaintiff asked a casino attendant why they were not fixing the machine, the attendant stated the casino was determining whether Plaintiff had broken it. *Id.* ¶¶ 429, 430. Eventually Plaintiff's ticket was printed and he left. *Id.* ¶ 441. When he returned to the casino days later, casino employees told him he had to pay $1,300 in restitution for the broken Fire Link machine before he could play. *Id.* ¶ 445. Plaintiff instead opted to leave the casino. *Id.* ¶ 456.

Plaintiff's Complaint, liberally construed, alleges claims including federal national origin discrimination under the Civil Rights Act of 1964, state law claims under the Maryland Consumer Protection Act, and state law claims for defamation, false arrest, and malicious prosecution.[1] ECF 1.

## II.   Legal Standards

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

---

[1] Plaintiff's Complaint, which spans 82 pages, is not a model of clarity. It essentially consists of a narrative description of incidents occurring over a five-year period, randomly interspersing designations such as "Count [number]" before a paragraph or set of paragraphs describing certain chronological events. While the Complaint's structure does not comport with either the Federal Rules of Civil Procedure or this Court's Local Rules, because Plaintiff is a self-represented litigant, this Court has liberally construed the pleading and has attempted to ferret out the claims Plaintiff intends to assert.

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from

5

the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

Because Plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd* 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd.*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

### III. Analysis

#### A. Motion to Stay

Despite the fact that the Complaint describes events occurring as far back as 2017, Plaintiff did not file this lawsuit until June of 2022. In his Complaint, Plaintiff alleged an intent to request the service of the Attorney General pursuant to 42 U.S.C. § 2000a-5(a). *Id.* ¶ 23. Nevertheless,

Plaintiff waited another four months to submit that request, filing it on October 10, 2022. ECF 10 at 1. And Plaintiff then waited another month before asking this Court to stay this proceeding. *See id.* (filed 11/14/2022). The motion requests an indefinite stay "until the office of the Attorney General decides on plaintiff's request." *Id.* at 1. In his surreply, Plaintiff suggests that this Court could impose a reasonable stay instead of an indefinite one. ECF 16.

In considering a motion to stay, this Court must exercise "judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). Among other factors, courts consider the length of the requested stay and the burden that a stay would impose on the nonmovant, along with the hardship the movant would face if the motion were denied. *Hunt Valley Baptist Church, Inc. v. Baltimore Cnty.*, Civ. No. ELH–17–804, 2018 WL 1570256, at *2 (D. Md. Mar. 29, 2018). An indefinite stay, or even a lengthy stay, in a case involving incidents that already occurred several years ago contravenes expeditious and comprehensive disposition. Additionally, for the reasons set forth below, Plaintiff's existing Complaint is subject to dismissal on several bases, so simply postponing that inevitable decision does not benefit either party. The motion to stay will therefore be denied.

### B. Motion to Dismiss

Although the parties have argued all of Plaintiff's claims, this Court turns first to Plaintiff's federal causes of action. Finding Plaintiff's federal claims to be subject to dismissal on limitations grounds, on notice grounds, and on the sufficiency of the allegations, this Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims and will dismiss those claims without prejudice and without further analysis. Plaintiff will be free to refile those claims in state court.

### 1. Statute of Limitations for Federal Discrimination Claims

Plaintiff brings his discrimination claims under Title II of the Civil Rights Act of 1964. Those claims are governed by Maryland's three-year statute of limitations. *McGill v. Koros, LLC*, Civ. No. JKB-20-3191, 2021 WL 4170402, at *5 (D. Md. Sept. 14, 2021) (citing *Kohler v. Shenasky,* 914 F. Supp. 1206, 1210 (D. Md. 1995)). Plaintiff's contrary contention that the applicable statute of limitations is the four-year prescriptive period in 28 U.S.C. § 1658 is unavailing, as that statute applies only to civil actions brought under an act of Congress enacted after December 1, 1990. *See Sierra Club v. U.S. Dep't of Interior*, 899 F.3d 260, 267-68 (4th Cir. 2018). The Civil Rights Act of 1964 clearly took effect before 1990. Thus, any claims Plaintiff asserts arising out of incidents on or before June 23, 2019 (three years before the Complaint was filed) are time-barred. Plaintiff's Complaint only describes three incidents after that date: the alleged "false arrest" incident on October 18, 2019, ECF 1 ¶¶ 311-64, the incident in which he attempted to ban himself from the casino on April 17, 2021, *id.* ¶¶ 365-404, and the incident involving the Fire Link machine in mid-July, 2021, *id.* ¶¶ 405-70. None of those claims sound in discrimination or suggest that persons of a different national origin received different treatment in substantially similar circumstances. Thus, they do not support a viable federal discrimination claim.

### 2. Notice of Civil Rights Act claims

Even were Plaintiff's discrimination claims not time-barred, they are precluded by the fact that he did not provide written notice to Maryland's Commission on Civil Rights before filing this suit. *See* 42 U.S.C. § 2000a-3(c); *Hodge v. Cordish Co., Inc.*, Civ. No. ELH-17-254, 2017 WL 3007069, at *5-6 (D. Md. July 14, 2017) (dismissing discrimination claims under the Civil Rights Act where the plaintiff failed to provide notice to Maryland's Commission on Civil Rights

pursuant to § 2000a-3(c)). Absent any allegation that, at any time, written notice was given to Maryland's Commission on Civil Rights, Plaintiff's discrimination claims must be dismissed.

### 3. Damages Sought

Plaintiff's federal discrimination counts also are subject to dismissal because he seeks only monetary damages for claims under § 2000a-3. Monetary damages are not recoverable for such claims. *Id.* ("[Section] 2000a-3 only authorizes suits for injunctive or declaratory relief; it does not permit suits for damages") (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)).

### 4. Inadequacy of Claim for Retaliation for Protected Activity

Plaintiff appears to allege that the casino's decision to seek $1,300 in restitution for the Fire Link machine in July, 2021 constitutes retaliation for his threatening to sue the casino for discrimination. ECF 1 ¶ 470. The Complaint is devoid, however, of any allegation that he threatened legal action against Defendants for discriminatory treatment at any time within reasonable temporal proximity of the casino's claim for restitution.[2] The only alleged events occurring in 2021 were Plaintiff's unsuccessful effort to ban himself from the casino and then the incident with the Fire Link machine. Neither of those incidents involved purported discrimination or any threat of legal action, and Plaintiff did not actually file this lawsuit until nearly a year later, in June, 2022. He has therefore not plausibly alleged that the casino's attempt to collect restitution for the broken machine constituted retaliation for any protected activity on his part.

---

[2] The Complaint does state that in October, 2019, during the incident for which Plaintiff alleges false arrest, he told the Head of Security that "he was going to take them to court for this" if he were exculpated by the camera footage. *Id.* ¶ 349. There is no plausible causal link between that isolated threat of legal action and the incident involving the broken Fire Link machine nearly two years later. Plaintiff's only other alleged threats of legal action against the casino occurred even earlier, in July, 2018, further weakening any causal link to the malfunctioning slot machine in 2021. *Id.* ¶ 241.

### 5. Remaining State Law Claims

Plaintiff also appears to assert certain state law claims for violation of the Maryland Consumer Protection Act, defamation, false arrest, and malicious prosecution. Given the dismissal of all federal claims at this early stage in the litigation, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law causes of action, which are best adjudicated in Maryland state court. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"). Accordingly, all of Plaintiff's claims are dismissed without prejudice.

## IV.   Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 5, will be granted as to all claims, which are dismissed without prejudice. Plaintiff's motion to stay, ECF 10, will be denied. A separate Order follows.

Dated: December 13, 2022                                      /s/
                                                          Stephanie A. Gallagher
                                                          United States District Judge